# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

ANTIGONE GRANT,

*Plaintiff*,

v.

ALBEMARLE COUNTY,

*Defendant.*

CASE NO. 3:20-cv-00026

MEMORANDUM OPINION
& ORDER

JUDGE NORMAN K. MOON

This matter is before the Court on Defendant Albemarle County's motion to dismiss Plaintiff's amended complaint, Dkt. 15, and on Plaintiff's motion for preliminary injunction, Dkt. 10. The Court concludes that Plaintiff's allegations, taken as true, do not establish that she was entitled to a continued Section 8 housing voucher at the time the local housing authority terminated it. Specifically, Plaintiff has not alleged that she could provide all the required documentation to the local housing authority, without which she would not have been entitled to the voucher even if any of her claims otherwise had merit. Nor has Plaintiff submitted evidence to this effect on the Court's consideration of Plaintiff's motion for preliminary injunctive relief, as would have been necessary to demonstrate a likelihood of success on the merits.

Because this deficiency in Plaintiff's pleading cuts across Plaintiff's claims, but also may potentially be remedied in an amended pleading, the Court grants the County's Motion to Dismiss without prejudice and affords Plaintiff leave to amend.

1

<u>Background</u>

1. *Section 8 Housing Voucher Program*

Congress enacted Section 8 of the Housing Act of 1937 to help low-income families

obtain decent, safe, and affordable housing. 42 U.S.C. § 1437f. Under the Housing Choice

Voucher ("HCV") Program, the United States Department of Housing and Urban Development

("HUD") allocates federal funds to a local Public Housing Authority ("PHA"), which distributes

those funds to low-income tenants participating in the HCV Program to supplement their rent

and utility costs. 42 U.S.C. § 1437f(o).

Participants in the Section 8 housing voucher program undertake certain "family

obligations." One such obligation is to "supply[] required information" to the PHA. 24 C.F.R.

§ 982.551(b). Specifically, "[t]he family must supply any information that the PHA or HUD

determines is necessary in the administration of the program," and that "information" includes

"any requested certification, release or other documentation." <u>Id.</u> § 982.551(b)(1). In addition,

"[t]he family must supply any information requested by the PHA or HUD for use in regularly

scheduled reexamination or interim reexamination of family income and composition in

accordance with HUD requirements." <u>Id.</u> § 982.551(b)(2). In other words, "Section 8 program

participants are required to comply with 'family obligations,' which include an annual

redetermination of eligibility and timely reporting of changes in income." <u>Awnuh v. Pub. Hous.</u>

<u>Agency of City of St. Paul</u>, No. 19-cv-2765, 2019 WL 6492465, at *1 (D. Minn. Dec. 3, 2019);

<u>Coley v. Brook Sharp Realty</u>, No. 13-cv-7527, 2015 WL 5854015, at *3 (S.D.N.Y. Sept. 25,

2015) ("Once an applicant household is accepted into a Section 8 housing unit, the family

receiving the subsidy must recertify its income annually in order to confirm that it remains

eligible for a subsidy and to recalculate the appropriate amount under the applicable federal

regulations.").

All information the family provides must be "true and complete." 24 C.F.R.

§ 982.551(b)(4). The PHA may "at any time … terminate program assistance for a participant,"

for any number of reasons, including the family's violation of any obligation under the program.

24 C.F.R. § 982.552(c)(1).

2. *Events Leading to Termination of Plaintiff's Housing Voucher*

In ruling on a motion to dismiss, the Court must assume the truth of all well-pleaded

factual allegations in the complaint and draw all reasonable inferences therefrom in the light

most favorable to the plaintiff. Plaintiff Antigone Grant has held a Section 8 HCV for about

thirteen years. Dkt. 9 ¶ 30 (First Am. Compl.). Plaintiff has been estranged from her husband

since she got the voucher because he is abusive. Id. ¶¶ 31–33. As a result of this abuse, Plaintiff

has been diagnosed with post-traumatic stress disorder ("PTSD"). Id. ¶ 35.

Plaintiff has seven children—six of which she had with her estranged husband who are

the subjects of a pending custody dispute, and a seventh who lives with her full time. Id. ¶ 34. In

September 2019, the Henrico County Juvenile and Domestic Relations Court awarded Plaintiff

primary physical custody of the children "during the summers and every other weekend during

the school year," and awarded her estranged husband "primary physical custody during the

school year and every other weekend in the summer." Id. ¶ 42. Plaintiff alleges that, "[a]s part of

his ongoing abuse, [her] estranged husband has been trying to take full custody of the children

and destroy [her] housing stability." Id. ¶ 43.

The circumstances leading up to the termination of Plaintiff's housing voucher in late

2019 and early 2020 are significant and will be recounted in some detail. During this period,

Albemarle County Office of Housing ("ACOH") requested various types of documents from

Plaintiff so she could show she remained entitled to the voucher. Plaintiff sent in only some of

the requested documents, failed to turn in the rest, and missed her recertification appointment.

On November 22, 2019, ACOH sent Plaintiff a notice relating to her annual recertification. Id. ¶ 54.[1] On December 9, 2019, Plaintiff emailed her voucher specialist and primary contact at ACOH asking her to give Plaintiff a call, but she did not do so. Id. ¶¶ 55–57. Plaintiff alleges that she made this request because she "was worried she might be missing things that needed to be done," since she was under "extreme stress." Id. ¶ 56. Plaintiff asserts that given numerous court obligations involving her estranged husband in December 2019 and January 2020, she was in a "severely frazzled" mental state. Id. ¶¶ 58–60. Plaintiff did not provide the required documents. See id. ¶¶ 54–60.

On December 30, 2019, an anonymous "concerned citizen" emailed ACOH stating that Plaintiff was "abusing the housing voucher program," and that "permanent sole custody" had been awarded to the father of six of her children. Id. ¶ 61; Dkt. 9-2.

On January 8, 2020, ACOH sent Plaintiff a letter which referenced several problems with Plaintiff's housing voucher. Id. ¶¶ 63–65; Dkt. 9-3. First, the letter noted an unresolved issue that Plaintiff owed money to a previous housing agency, and, because ACOH was "not permitted to continue rental assistance to families who are in debt to any PHA in connection with Section 8," ACOH required Plaintiff to pay the balance owed and provide "proof of payment by January 24, 2020." Dkt. 9-3. Second, ACOH referenced the anonymous complaint regarding Plaintiff's potential abuse of the housing voucher program and reminded Plaintiff that "[f]ailure to report household composition changes is a violation of the program." Id. ACOH required Plaintiff to submit "the most recent court documentation regarding the custody of [her] children," as well as

---

[1] Plaintiff has not attached this notice to her complaint or further elaborated upon this notice. From other allegations, it appears that this notice scheduled her recertification meeting in December 2020. See Dkt. 9-4 (January 10, 2020 notice, described as "second and final attempt" to reschedule Plaintiff's recertification meeting on January 29, 2020).

"school enrollment information for each of [her] children." Id. ACOH provided school

enrollment forms to be completed by school staff, or explained how Plaintiff could submit a

statement from the school that would also be compliant if it provided each "child's name, grade,

name of school attending, and parent or guardian address on record." Id. ACOH stated that this

information was due by January 24, 2020, and that Plaintiff's "rental assistance will terminate

effective February 29, 2020 if these items are not received." Id.

On January 10, 2020, ACOH sent Plaintiff another letter regarding her recertification.

Dkt. 9 ¶ 66; Dkt. 9-4. At the top was clearly marked that the letter was a "second and final

attempt" related to ACOH's "annual recertification process." Dkt. 9-4 at 1 (capitalization

removed). In the letter, ACOH stated that "[e]arlier this month, this office sent you a notice

stating that your Section 8 Rental assistance is scheduled to terminate on March 1, 2020. This is

the second attempt and you missed your scheduled appointment. We have rescheduled your

Recertifications Briefing for January 29, 2020 …." Id.[2] The address and time of the rescheduled

appointment were provided. Id. The letter continued, in bold font, "[i]f you wish to continue

rental assistance, you and all members of your household age 18 and over must attend." Id. And

it cautioned that "[t]here will be no further rescheduling and no further attempt to reach you

from our office." Id.

The January 10, 2020 letter also stated that Plaintiff was "required to complete the

previously mailed paperwork and bring it to the briefing session," and that Plaintiff "MUST

provide the following documents": (1) "Verification of all household income which must be

---

[2] While this letter mentions an earlier letter that scheduled Plaintiff's first recertification
appointment, the complaint and attached materials do not describe that missed appointment. But
in any event, those events are not material to this decision. This letter also refers to a March 1,
2020 termination date, while all other communications state that the date of termination would
be February 29, 2020. Any such discrepancy is also immaterial.

dated within the past 30 days," which could include paystubs, Social Security, Supplemental Security Income or "SSI," and Social Security Disability Insurance or "SSDI" benefits, child support, gifts, and any benefits received under the Temporary Assistance to Needy Families or "TANF" program; (2) "Verification of all assets" including bank statements; (3) "Verification of all childcare expenses for children age 12 and under"; (4) "Verification of School enrollment for all school aged children and any full time students over the age of 18," which could be provided in several "acceptable forms"; and (5) "Verification of unreimbursed medical expenses" in certain circumstances. Dkt. 9-4 at 1–2. At the end of the letter, ACOH again reiterated in large bold font: "PLEASE HAVE THESE DOCUMENTS WITH YOU AT YOUR RECERTIFICATION APPOINTMENT." Id. at 2.

On January 24, 2020—the due date for the documents ACOH requested in its January 8 letter—Plaintiff emailed ACOH a copy of a repayment plan set up with a prior PHA from when she lived in Richmond. Dkt. 9 ¶¶ 46, 67. ACOH responded to Plaintiff that day, saying that they needed the other items referenced in the January 8 letter (i.e., court documents showing custody of her children, and school enrollment information) by 5:00 p.m. that day. Id. ¶ 68.

The next day, January 25, Plaintiff emailed ACOH a copy of the custody order for one of her children. Id. ¶ 69. She explained that was the only order she had been provided, but that the order had the same terms as for all six of her children involved in the custody dispute. Id. Plaintiff also informed ACOH that "she shared physical custody [of her six children] with her estranged husband," and that she had appealed the custody order. Id. ¶ 70. In addition, Plaintiff "explained in great detail much of the abuse she has suffered at the hands of her estranged husband." Id. Plaintiff did not submit the other documents ACOH requested on January 8. See id. ¶¶ 68–72; see also Dkt. 9-5.

On January 27, 2020, ACOH responded to Plaintiff. Dkt. 9-5. In that communication, ACOH stated that "[c]ustody information and school enrollments are still required" for the five children not addressed in the custody order Plaintiff had provided. Id. Plaintiff "w[as] previously given the due date of January 24th but [] did not submit the required paperwork"; however, "as a courtesy," ACOH gave Plaintiff an extension until January 29, 2020—the date of her recertification appointment— to provide the information. Id. With respect to the court order on the one child's custody that Plaintiff had submitted, ACOH stated that if a family member does not live with a participant in the program "50 percent or more of the time," ACOH must "remove them from [her] housing case," and that the order Plaintiff had provided reflected that the one child "does not live with [her] 50% or more of the time." Id. ACOH permitted Plaintiff to "provide information reflecting that he lives with [her] 50% or more of the time," but without that information, ACOH would "be removing him from [her] housing case." Id. ACOH reattached the January 8, 2020 letter. Id.; see also Dkt. 9 ¶¶ 72–74. In response to Plaintiff's description of the abuse by her estranged husband, ACOH responded in the letter that they were "very sorry [she is] experiencing these personal problems," but stated that she is "still required to report changes and proper documentation, in writing, to our office." Dkt. 9-5.

On January 29, 2020, Plaintiff failed to appear for her scheduled recertification meeting. Nor did Plaintiff submit to ACOH by that date any of the remaining documents ACOH required from her in its January 8 and 10, 2020 letters. See Dkt. 9 ¶¶ 66–80; Dkt. 9-6 at 1; Dkt. 9-8 at 1.

On January 30, 2020, Plaintiff emailed ACOH early in the morning stating: "The custody papers I sent are for all 6 children. I am not sure what else I can send. I was also unaware that this was a change that I was supposed to report. I apologize for that." Dkt. 9-6 at 2. Later that day, ACOH responded to that email, stating that Plaintiff had "not shown for either of [her] recertification appointments," and had "not submitted any of the Annual Recertification

7

documents needed to continue rental assistance." <u>Id.</u> at 1. ACOH further stated that Plaintiff's

custody paperwork "only addresses one child," but regardless, Plaintiff had "not provided the

required school enrollments" which "are always a requirement at recertification time." <u>Id.</u>

ACOH attached deadline and extension letters, as well as the letters relating to Plaintiff's first

and second "attempt[ed] recertification appointments." <u>Id.</u> Accordingly, ACOH stated that it was

"<u>required to move forward with the termination of [her] assistance effective February 29th due</u>

<u>to failure to comply with [her] Family Obligations (attached) in submitting required documents</u>."

<u>Id.</u> at 1–2 (emphasis added). ACOH attached appeal instructions and stated that it also would be

sending her a termination letter by certified mail. <u>Id.</u> at 2.

> On January 30, 2020, ACOH sent Plaintiff a letter by certified mail, stating:
>
> Within the last 30 days this office has sent you letters requesting information required to continue your Section 8 Rental Assistance beyond its scheduled termination date of February 29, 2020.
>
> Since you have not responded to any of these letters, your Rental Assistance will terminate on February 29, 2020. No payments will be made to your landlord on your behalf and this office will have no further contractual obligation for your housing following that date.
>
> You may request an Informal Hearing concerning this action by contacting Albemarle County Office of Housing, in writing, within 10 days of this letter.

Dkt. 9-7 at 2. Attached to the letter were documents providing procedures for informal hearings

before the PHA, a HUD form which can be used to seek protections under the Violence Against

Women Act ("VAWA"), and an ACOH form providing a "Notice of Occupancy Rights under

the Violence Against Women Act." <u>Id.</u> at 3–14. Plaintiff alleges that she did not receive this

termination notice until her counsel later requested it. Dkt. 9 ¶ 77; <u>see also</u> <u>id.</u> ¶ 78; Dkt. 9-7 at

15 (post office tracking showing attempted delivery on February 3, and that a notice was left

because the recipient was unavailable).

3. *Informal Hearing & Hearing Officer's Decision*

With the assistance of Plaintiff's case worker at the local community services board, Region Ten, Plaintiff requested an informal hearing to appeal her housing voucher termination. Dkt. 9 ¶ 79. The hearing was conducted on March 10, 2020. At the hearing were Plaintiff and her counsel, Plaintiff's case worker at the Shelter for Help in Emergency ("SHE"), and Plaintiff's friend, Ms. Burgess; ACOH's case worker for Plaintiff's case; an "attorney for Albemarle County, Susan Baumgartner"; and the hearing officer, Assistant Director of the Albemarle County Department of Social Services, Wanda Hoerman. Id. ¶¶ 80–81. Plaintiff alleged on information and belief that "Ms. Baumgartner is an attorney for Albemarle County, and represents ACOH and the Albemarle County Department of Social Services." Id. ¶ 82.

At the hearing, Plaintiff requested the following as "reasonable accommodations" for her PTSD: (1) "not terminating her voucher and rescheduling the recertification meeting with [her] Region Ten case worker … present at said meeting"; (2) "holding all future meetings at [Plaintiff's] home"; and (3) "including [Plaintiff's Region Ten case worker] on all communications between ACOH and [Plaintiff]." Id. ¶ 83.

Plaintiff, Plaintiff's case worker at SHE, and her friend Ms. Burgess, testified that Plaintiff lacked any ill intent to commit a program violation or to fail to attend her recertification hearings, and that she did not understand she had to report the change in custody. Id. ¶ 86. They also testified to Plaintiff's "mental state" surrounding the "chaos" at the time of the recertification hearing. Id. Finally, they testified how her loss of the housing voucher would "lead to a high risk of homelessness for [Plaintiff's] infant son (at the time ten months old), who lives with her full time." Id.

9

Plaintiff's counsel raised arguments at the hearing concerning ACOH's alleged failure to state a reason on the termination notice, Fair Housing Act violations, and VAWA protections. Id. ¶ 85. Plaintiff also asked the hearing officer to consider not terminating her housing voucher until her custody dispute was finalized, at which time she "could report the permanent change in household composition if she did not receive full custody of her children and discuss a repayment plan for any overpayment." Id. ¶ 86. Plaintiff also "submitted a VAWA form detailing her abuse and why the termination was connected to said abuse." Id. ¶ 84. There is no allegation that Plaintiff provided any or all of the requested documentation at the hearing, or that she stated that she was able to do so. Id. ¶¶ 80–93.

At the hearing, Ms. Baumgartner—an attorney for Albemarle County who represents ACOH and the Albemarle County Department of Social Services—"cross-examined" Plaintiff. Id. ¶¶ 82, 88. Then, "[a]t the end of the hearing, Ms. Baumgartner informed [Plaintiff] that she would be advising [the Hearing Officer] Ms. Hoerman, and Ms. Hoerman confirmed she wanted to meet with Ms. Baumgartner." Id. ¶ 89.

On March 17, 2020, the Hearing Officer issued her decision, finding that "the actions taken by [ACOH] to terminate your housing choice voucher were appropriate." Dkt. 9-8 at 1. In the letter decision, the Hearing Officer explained that families must provide the PHA "with complete and accurate information as determined by the PHA to be necessary for administration of the program," but that Plaintiff "did not attend" her reexamination interviews, "or provide the necessary information for [her] redetermination in a timely manner." Id. The Hearing Officer also rejected Plaintiff's arguments for accommodations under VAWA, noting that ACOH had "granted extensions" to Plaintiff "to provide necessary paperwork and rescheduled [her] missed appointments." Id. The Hearing Officer also noted that Plaintiff did not request accommodations until after her benefits were terminated. Id. Finally, the Hearing Officer found that Plaintiff's

children "have been out of [her] home at least more than 50 percent of the time since sometime in 2018," and further, that the court order indicating that change was entered more than 30 days before Plaintiff reported the change even though she was "required to report changes in family composition within 30 days of composition change." Id. at 2. For those reasons, the Hearing Officer found "by a preponderance of the evidence," that "the housing action to terminate [Plaintiff's] assistance is valid." Id. see also Dkt. 9 ¶¶ 90–93 (describing decision).

Plaintiff sought a delay of termination of her housing benefits until the COVID-19 pandemic subsided and appealed the Hearing Officer's decision. Both were denied. Dkt. 9 ¶¶ 94–97.

4. *Procedural History*

Plaintiff thereafter filed this lawsuit in federal court against Albemarle County, and later filed the operative First Amended Complaint. Dkt. 9. Plaintiff also contemporaneously filed a motion for preliminary injunction. Dkt. 10. Defendant Albemarle County filed a motion to dismiss, Dkt. 15, which was briefed alongside Plaintiff's motion for a preliminary injunction. After the conclusion of briefing, this case was transferred to the undersigned for any further proceedings and resolution. Dkt. 27. In December 2020, this Court heard argument on Albemarle County's motion to dismiss and Plaintiff's motion for preliminary injunction. Dkt. 32. At that time, Plaintiff introduced testimony in support of her request for preliminary injunctive relief. Subsequently, Plaintiff's counsel entered into the record the custody orders for Plaintiff's six children with her estranged husband. Dkt. 37 (under seal). The Henrico County Circuit Court Custody and Visitation Order, dated July 17, 2020, awarded Plaintiff' estranged husband "sole legal custody and primary physical custody of the children," and awarded Plaintiff certain limited visitation. Id. The record does not indicate whether there has been any appeal or further proceedings in that custody dispute.

11

In late March 2021, this Court entered an Order granting Albemarle County's motion to dismiss, without prejudice and affording Plaintiff leave to amend, and denying Plaintiff's motion for preliminary injunction, without prejudice and affording Plaintiff leave to refile. Dkt. 40. The reasons for that ruling are further described below.

Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Id. at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted). That is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics"; instead, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Still, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Preliminary injunctive relief is an "extraordinary" remedy that courts should only grant "sparingly." Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991).

The party seeking a preliminary injunction must demonstrate: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). A likelihood of success does not mean a "certainty of success," but rather, the plaintiff must "make a clear showing that he is likely to succeed at trial." Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) (citation omitted).

Reasoning

Plaintiff brings five claims. First, she sues for the County's failure to grant a reasonable accommodation in violation of the Fair Housing Act, 42 U.S.C. § 3601 et seq. Second, she sues under 42 U.S.C. § 1983 for alleged Fourteenth Amendment procedural due process violations. Specifically, she argues that the County failed to provide her sufficient notice of the grounds of her proposed termination; the Hearing Officer improperly engaged in ex parte communications; and that the Hearing Officer failed to consider any mitigating factors. Third, Plaintiff sues the County pursuant to § 1983, asserting a violation of her procedural due process rights and the rights provided by the VAWA. Plaintiff's last two claims assert violations of Virginia's Fair Housing Law, alleging that the County failed to grant her reasonable accommodation request and failed to engage in a required interactive process regarding such request. One of these claims clearly lacks merit and need proceed no further. For the remainder, the Court will dismiss the claims without prejudice and affording Plaintiff leave to amend.

In Count Two, Plaintiff has failed to state a plausible claim that ACOH violated her procedural due process rights based upon alleged insufficient notice of the grounds of her proposed termination. Dkt. 9 ¶¶ 120–42. Due process requires that a recipient of housing assistance "have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his

13

own arguments and evidence orally." Goldberg v. Kelly, 397 U.S. 254, 267–68 (1970). In

Goldberg, the Supreme Court saw no "constitutional deficiency in the content or form of the

notice," which involved "both a letter and a personal conference with a caseworker to inform a

recipient of the precise questions raised about his continued eligibility," and during which the

recipient was evidently "told the legal and factual bases for the Department's doubts." Id. at 268.

A later regulation provides that "the PHA must give the family prompt written notice that the

family may request a hearing," which must "[c]ontain a brief statement of reasons for the

decision." 24 C.F.R. § 982.555(c)(2)(i).[3] See also Dkt. 9 ¶ 120 (citing Goldberg and § 982.555

for governing standard).

Plaintiff's argument is that ACOH's notice to her "failed to include both the factual and

legal bases for termination." Dkt. 9 ¶ 122. Specifically, she contends that the notice only stated

that she had "not responded to any of [the] letters" sent by ACOH in the last thirty days, which

"fails to give factual specifications about which letters or program requirements it is referring to

as required by due process." Id. ¶¶ 123–24. Plaintiff asserts that she "had been in contact with"

ACOH "at least five times" in the preceding thirty days, and that merely "refer[ring] back to

previous communications" was insufficient. Id. ¶¶ 124–26.

There was no insufficient notice or procedural due process violation here. Far from it.

The January 30, 2020 termination notice mailed to Plaintiff that she challenges stated plainly:

"[w]ithin the last 30 days this office has sent you letters requesting information required to

continue your Section 8 Rental Assistance beyond its scheduled termination date of February 29,

---

[3] The regulation also provides that the notice must "[s]tate that if the family does not
agree with the decision, the family may request an informal hearing on the decision," and
"[s]tate the deadline for the family to request an informal hearing." Id. § 982.555(c)(2)(ii)-(iii).
Plaintiff does not argue that ACOH failed to provide proper notice in either respect.

2020," however, "[s]ince you have responded to any of these letters, your Rental Assistance will terminate on February 29, 2020." Dkt. 9-7. Within the 30 days prior to the termination notice, ACOH sent Plaintiff two letters requesting various types of documents from her. These were dated January 8, 2020 and January 10, 2020. Dkts. 9-3, 9-4. There is no dispute Plaintiff received those letters. Nor is there any dispute that Plaintiff did not submit most of the categories of documents ACOH requested; she submitted only her repayment plan with her prior PHA, and a custody order for one child which she said equally applied to her other children. There were other communications between ACOH and Plaintiff. For example, ACOH did correspond with Plaintiff when she failed to provide all requested documentation by the due date (e.g., Dkt. 9-5), but in that email, ACOH continued to reiterate the need for the outstanding documents requested from Plaintiff—there was no inconsistency with the January 8 and 10 letters. Nor should ACOH be punished for responding promptly and affording Plaintiff an extension so that she could provide all needed documents.

Plaintiff's insufficient notice argument is further undermined by the lengthy email ACOH sent her the same day as her termination notice—January 30, 2020. Dkt. 9-6. In that email, ACOH again explained the grounds for the termination of her assistance, "due to failure to comply with your Family Obligations (attached) in submitting required documents," and described specific deficiencies in the documents she submitted, including failure to provide school enrollment forms. <u>Id.</u> at 1–2. ACOH also noted Plaintiff had missed her recertification appointments. <u>Id.</u> In that email, ACOH also stated: "I have attached appeal instructions (Informal Hearings for Participants) along with the letters mailed to you regarding these requests." <u>Id.</u> at 2. There is no dispute that Plaintiff received this email, and indeed, a few days later Plaintiff forwarded it to her Region Ten case worker. <u>Id.</u> at 1. To be sure, there may be cases where a termination notice's reference to other documents renders the notice so vague,

contradictory or confusing as to constitute a failure to provide the recipient "the factual and legal bases" for proposed termination of benefits. This is not such a case.  Here, the communications between ACOH were clear and the record relatively straightforward and confined. ACOH apprised Plaintiff of the grounds of its proposed termination of benefits and exceeded the required "brief statement of reasons for the decision." 24 C.F.R. § 982.555(c)(2)(i).[4] Accordingly, Plaintiff's procedural due process claim on this ground will be dismissed with prejudice. Dkt. 9 ¶¶ 120–42.

But some of Plaintiff's claims appear more substantial. For instance, Plaintiff alleges that Albemarle County violated her procedural due process rights due to the Hearing Officer's ex parte communication with Ms. Baumgartner. Dkt. 9 ¶¶ 143–50. As alleged, Ms. Baumgartner—an "attorney for Albemarle County" who "represents ACOH and the Albemarle County Department of Social Services"—attended Plaintiff's informal hearing, along with ACOH's case worker also attended and the Hearing Officer. Id. ¶¶ 81–82. At the hearing, "Ms. Baumgartner cross-examined [Plaintiff]." Id. ¶ 88. Then, "[a]t the end of the hearing, Ms. Baumgartner informed [Plaintiff] that she would be advising [Hearing Officer] Ms. Hoerman, and Ms. Hoerman confirmed she wanted to meet with Ms. Baumgartner." Id. ¶ 89. The Hearing Officer sought to later "meet with Ms. Baumgartner to discuss the hearing, get advice on how to make a decision, and make said decision." Id. ¶ 146. Plaintiff alleges it can be presumed the Hearing Officer met with Ms. Baumgartner "to discuss the hearing and the outcome, Ms. Baumgartner

---

[4] Nor did ACOH violate Plaintiff's constitutional rights by failing to expressly cite in the termination letter regulations supporting termination of Plaintiff's voucher, even if ACOH's policies otherwise would require them to be included. Dkt. 9 ¶¶ 124–25. See Goodrich v. Newport News Sch. Bd., 743 F.2d 225, 227 (4th Cir. 1984) ("When the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations.").

advised Ms. Hoerman, and Ms. Hoerman relied on this information." Id. ¶ 149. Plaintiff claims that the Hearing Officer therefore had "ex-parte" and "improper communications with other parties." Id. at 21.

As the Supreme Court explained in Goldberg, "an impartial decision maker is essential" to resolve these disputes, and "the decisionmaker's conclusion as to the recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing." 397 U.S. at 271. Of course, administrative agencies often contain investigatory or prosecutorial functions as well as an adjudicatory function, and combining such functions, alone, does not violate due process. See Withrow v. Larkin, 421 U.S. 35, 47 (1975); but see Woods v. Willis, No. 3:09-cv-2412, 2010 WL 3808279, at *5-6 (N.D. Ohio Sept. 27, 2010) (holding that "a single individual in the agency's employ performing the dual functions of advocate and adjudicator thus raises serious constitutional concerns").

Counsel for Albemarle County writes in his brief that, "[a]s a hearing officer who was not trained in legal matters, Ms. Hoerman had a right to consult with legal counsel regarding the process of review," and she "chose to consult with [Ms. Baumgartner], an attorney in the Albemarle County Attorney's office who provides legal counsel to the Department of Social Services." Dkt. 16 at 8. The facts may bear out that innocent explanation: this was nothing more than routine advice from an agency's counsel to a hearing officer in the agency. But the Court is addressing these claims on a motion to dismiss where the Court must accept as true Plaintiff's allegations and draw reasonable inferences in her favor, and Plaintiff's allegations would appear to paint Ms. Baumgartner's role in her informal hearing as counsel for the adverse party.

Nonetheless, on these pleadings, even Plaintiff's more substantive claims falter because the allegations in the complaint, taken as true, do not establish that Plaintiff remained entitled to Section 8 assistance. Specifically, Plaintiff simply has not alleged—nor offered evidence in the

17

context of her motion for preliminary injunction—that she could provide ACOH the required documentation to verify her income and other recertification requirements.

All agree Plaintiff is subject to ACOH's regular recertification review to ensure she remains eligible for Section 8 assistance, and to determine the amount of the assistance. See 24 C.F.R. § 5.657(b) ("Regular examination. The owner must conduct a reexamination and redetermination of family income and composition at least annually."); Dkt. 20 at 3 ("Each HCV participant is required to recertify her income each year to ensure that she is paying the proper amount of rent."); Draft Transcript, Hr'g of Dec. 14, 2020 (Plaintiff's counsel: "So she was indeed required to recertify. … [T]he plaintiff has never taken the position that Ms. Grant never has to recertify.").

ACOH requested various documents from Plaintiff as part of the recertification process. Indeed, as Plaintiff has noted in her complaint, regulations authorize ACOH to request that information from her as part of that process. See 24 C.F.R. § 982.551(b) (an "obligation" of the participant is "supplying required information"); see also Dkt. 9 ¶ 153 (citing regulation, noting it was one of the bases for termination). Plaintiff's complaint details those requests, and she attached the requests to the complaint. See Dkts. 9-3 to 9-5; see also Dkts. 9-6 to 9-8 (decisions of ACOH identifying failure to comply with family obligations in submitting required documents as a ground of decision). Plaintiff's counsel takes issue with one of the requests, arguing that she was not required to provide the requested custody forms because the custody dispute was not yet final. E.g., Dkt. 9 ¶ 157; Dkt. 20 at 22. But counsel does not dispute the ACOH could validly require the other requested documentation as part of recertification, such as, for example, school enrollment forms for any children for which she had custody, or the other information concerning her income and assets.

At bottom, Plaintiff's failure to provide required information to ACOH was a central reason for termination of her housing voucher, and there is little dispute ACOH acted within its purview to require such information from Plaintiff. Nonetheless, the complaint fails to include any factual allegations that Plaintiff provided, tried to provide, or told the Hearing Officer or ACOH she could provide all the requested documentation. See Dkt. 9 ¶¶ 54–76, 83–87, 156–57, 191–94. Plaintiff does argue and allege that she should not have been required to provide such information at the time ACOH required it, and that it should have given her reasonable accommodations to accommodate her PTSD disability. However, those assertions that she should have been afforded reasonable accommodations—which included rescheduling a certification meeting with Plaintiff's Region Ten case worker, holding all future meetings at Plaintiff's home, and including Plaintiff's case worker on all communications with Plaintiff—do not, without more, make up for that pleading deficiency. See, e.g., id. ¶¶ 5, 83, 109–12, 191–94, 205–07, 218–21. Without those factual allegations that Plaintiff could provide the required documentation, any requested accommodation would not be reasonable, because they would not have ultimately resulted in Plaintiff providing the required information to ACOH.

The Court raised the significance of this issue at the hearing. And, to be sure, counsel for Plaintiff argued on numerous occasions that Plaintiff could provide all required documentation, if given the opportunity. See, e.g., Draft Transcript, Hr'g of Dec. 14, 2020 (Plaintiff's counsel: "[Plaintiff] has said that if they will reschedule the recertification appointment, she will provide the information. She's not asking to be excused from recertification or the provision of the documents."). Later, Plaintiff's counsel stated that Plaintiff "is happy to recertify for a two-person voucher if Albemarle County will permit that." Id. But the Court is tasked with reviewing the sufficiency of the allegations in the complaint, and counsel's oral argument cannot supply the missing allegations.

As this matter is also before the Court on Plaintiff's motion for preliminary injunction, the Court further notes that Plaintiff's counsel has not introduced any evidence or testimony (including in Plaintiff's own testimony), that she could provide all the documents required by ACOH as part of its recertification review. Having failed to state a claim for relief for this reason, and having also failed to introduce evidence to this effect, the Court cannot conclude on this record that Plaintiff has established that she is likely to prevail on the merits of any of her claims. Accordingly, since Plaintiff has at this time failed to establish a likelihood of success on the merits, the Court will conclude its analysis of the preliminary injunction factors, subject to any future filings. Cf. Tradeways, Ltd. v. United States Dep't of the Treasury, No. 30-cv-1324, 2020 WL 3447767, at *7 (D. Md. June 24, 2020) ("I begin with the Company's likelihood of success on the merits. Because I conclude that Tradeways is not likely to prevail [on the merits], my analysis ends there as well.").

*   *   *

Noting that the Court "should freely give leave [to amend a complaint] when justice so requires," Fed. R. Civ. P. 15(a)(2), and considering indications in the record that Plaintiff may be able to allege that she could supply all required documents to ACOH as part of its regular, annual recertification review, the Court will afford Plaintiff leave to amend her complaint, except as otherwise provided above. Accordingly, the Court has and will **GRANT** Albemarle County's motion to dismiss, **without prejudice**, and afford Plaintiff **leave to amend**. Dkt. 15. Plaintiff may file her Second Amended Complaint by **April 21, 2021**. In addition, the Court will **DENY** Plaintiff's motion for preliminary injunction, **without prejudice**, and affording Plaintiff **leave to refile**. Dkt. 10. Any renewed motion for preliminary injunction shall also be filed by **April 21, 2021**.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion & Order to all counsel

of record.

ENTERED this ____8th____ day of April, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

21